THE HERMAN BENNETT CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7196-74.    Filed December 3, 1975.

*J. Edward Johnson,* for the petitioner.
*Suzanne B. O'Neill,* for the respondent.

OPINION .

FEATHERSTON, *Judge:* Respondent determined a deficiency of $6,160.98 in petitioner's Federal income tax for 1963. The issue for decision is whether the period of limitations for the assessment of a deficiency in petitioner's income tax for 1963 had expired prior to June 11, 1974, the date on which a notice of deficiency was mailed to petitioner. The answer depends upon whether, within the meaning of section 6501(j),[1] the determined deficiency for 1963 was "attributable to" a net operating loss which was incurred in 1969 and carried back to 1966.

The facts are all stipulated.

At the time the petition was filed, the Herman Bennett Co. (hereinafter petitioner) had its principal office in Brownwood, Tex. Petitioner maintained its records and filed its income tax returns for 1963 through 1969 on the calendar year basis.

The resolution of the disputed issue requires the consideration of the facts in the light of the Code provisions allowing and limiting the investment credit. In general terms, a credit against tax is allowed for a stated percentage of certain types of investments.[2] However, the credit allowed for any taxable year is limited to so much of the tax liability for that year as does not exceed $25,000, plus 25 percent of the liability for tax in excess of $25,000.[3] As a general rule, if the amount of the credit earned in a taxable year exceeds this limitation, such excess shall be an investment credit carryback to each of the 3 prior taxable years and a carryover to each of the 7 taxable years following the unused credit year.[4] Also, a net operating loss carryback may reduce or eliminate the tax in a prior year for which an investment credit has been allowed. As a result, the investment credit may be released and made available for carryover or carryback to some other year.[5]

Petitioner's taxable income for 1963 through 1967 was adjusted pursuant to an audit conducted by respondent. According to a revenue agent's report dated August 17, 1970,[6]

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.

[2] Secs. 38 and 46(a)(1).

[3] Sec. 46(a)(2)(A) and (B).

[4] Sec. 46(b).

[5] See sec. 1.46-2(c), Income Tax Regs.

[6] The stipulation and certain other exhibits refer to this report as being dated July 27, 1970, but the stipulated exhibit is, in fact, dated Aug. 17, 1970. This discrepancy is not explained in the record.

petitioner's corrected taxable income for 1966 was $107,118.37. In computing the 1966 tax on this corrected income, petitioner was allowed an investment credit of $10,749.90, leaving, after other adjustments, a corrected tax liability of $42,890.16. Of the total investment credit so allowed, only $142.73 was actually earned in 1966; the remainder was earned in other taxable years and was carried over to 1966.

On its 1969 income tax return, petitioner reported a net operating loss of $152,533.23. Petitioner timely filed an amended Form 1139, "Corporation Application for Tentative Refund from Carryback of Net Operating Loss and Unused Investment Credit," requesting a carryback of this net operating loss to 1966. This carryback was allowed, and it eliminated all taxable income for 1966, thereby releasing the investment credit of $10,749.90 previously allowed in 1966. Petitioner also filed a Form 1120X, "Amended U.S. Corporation Income Tax Return," dated December 23, 1970, claiming that $6,160.98 of the unused investment credit originally allowed in 1966 should be applied to petitioner's tax for 1963 and requesting a refund in that amount.

The amended Form 1139 for 1969 and the Form 1120X for 1963 were accepted by the Audit Staff of the Southwest Service Center on May 24, 1971. On August 17, 1971, the Internal Revenue Service allowed an overpayment of income tax in the amount of $6,160.98 for 1963 based upon the amended Form 1139 and Form 1120X. At least $6,018.25 of the requested refund of $6,160.98 actually represented a carryback of 1965 investment credit to 1963.[7] Petitioner, in filing the Form 1120X, and respondent, in allowing a refund pursuant to amended Form 1139 and Form 1120X, proceeded on the erroneous premise that all of the 1966 investment credit to be carried back was earned in 1966, when in fact only $142.73 was earned in that year, and $6,018.25 was earned in 1965.

The carryback investment credit of $6,160.98 was not an allowable credit because the maximum allowable investment credit for 1963 of $27,503.66, had already been allowed. The refund of 1963 tax allowed on August 17, 1971, was thus

---

[7] The parties stipulated that this portion of the investment credit carryback to 1963 was earned in 1965. Presumably this amount was carried over to 1966 and was part of the $10,749.90 released by the loss carryback from 1969. The record, however, provides no evidence independent of the stipulation which clearly establishes the source of the investment credit allowed in 1966, except that it is agreed that only $142.73 was earned in that year.

erroneous. Respondent did not file a suit for the recovery of this erroneous refund. Instead, respondent mailed to petitioner a notice of deficiency for 1963 on June 11, 1974, and the timeliness of that notice of deficiency is the disputed issue.

Section 6501(j), prescribes the limitations period for the assessment of deficiencies attributable to investment credit carrybacks.[8] The first operative clause of that section deals with the applicable limitations period where an investment credit carryback has been allowed erroneously. In such circumstances, that clause in effect suspends the running of the statute of limitations for the year of the erroneous allowance "until the expiration of the statutory period of limitation on assessments attributable to the taxable year from which the investment credit carryback arose." S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 870-871. The second operative clause deals with the applicable statute of limitations where the erroneous allowance of an investment credit carryback is "attributable to" a net operating loss carryback. In those circumstances, the period of limitations is coterminous with that of the year in which the net operating loss was incurred. Conf. Rept. No. 1010, 90th Cong., 1st Sess. (1967), 1968-1 C.B. 684; cf. *Gordon L. Krieger,* 64 T.C. 214, 215 (1975); *John S. Neri,* 54 T.C. 767, 771 (1970); *Frank B. Polachek,* 22 T.C. 858, 863-865 (1954). The scope of the section is limited, however. It does not authorize the assessment of deficiencies for the year to which the investment credit was carried when those deficiencies are unrelated to the erroneous carryback. Cf. *Ione P. Bouchey,* 19 T.C. 1078, 1081-1082 (1953); *Edward G. Leuthesser,* 18 T.C. 1112, 1125 (1952).

The issue to be decided, therefore, is whether the erroneous investment credit carryback to 1963 was "attributable to" the net operating loss carryback from 1969 to 1966 within the meaning of section 6501(j). We think it was.

It is clear that the amended return for 1963 was part and parcel of the request for a tentative refund for 1966. The two

---

[8] SEC. 6501(j). INVESTMENT CREDIT CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of an investment credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused investment credit which results in such carryback may be assessed, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.

documents were accepted and considered as a unit by respondent. The effect of the allowance of the net operating loss carryback was to release the $10,749.90 investment credit allowed in 1966, and the effect of the acceptance of the claim incorporated in the amended return (Form 1120X) for 1963 was to allow a portion of that investment credit to be erroneously carried back to 1963. Without the net operating loss carryback from 1969 to 1966, requested on the Form 1139, and its allowance by respondent, there would have been no ground for a claim for, or allowance of, a refund of tax for 1963. The computation of the refund on the Form 1120X bears the notation: "Carryback of unused investment credit from 1966 not recovered on Form 1139—See Schedule attached." The attached schedule contains a detailed analysis of petitioner's claim to a carryback to 1963 of the released investment credit for 1966. Obviously, the erroneous investment credit carryback to 1963 in its entirety was "attributable to" the allowance of the net operating loss carryback from 1969. The transaction thus fits neatly within the category created by the second operative clause of section 6501(j).

Petitioners make much of the fact that the investment credit carried back to 1963 was *earned* in 1965 and that it was refunded as a result of a separate claim for refund. That argument might have relevance under the first operative clause of section 6501(j). However, under the second operative clause of that section, the source of the investment credit itself is beside the point. Rather, the issue is whether the investment credit *carryback* may be traced directly to the net operating loss carryback. That petitioner utilized a separate Form 1120X to apply for the refund is similarly irrelevant when the refund is based upon an investment credit carryback "attributable to" a net operating loss carryback. Indeed, in the instant case, petitioner's Form 1120X incorporates the Form 1139 by at least two specific references therein.

Respondent has three procedures open to him in the correction of errors in the allowance of refunds pursuant to applications for tentative carryback adjustments of tax: (1) Assessment of deficiencies attributable to mathematical errors under section 6213(b)(2); (2) suit for an erroneous refund under section 7405 (see also sections 6514 and 6532(b)); and (3) assessment as a deficiency pursuant to a notice of deficiency issued under section

6212 within the time prescribed by section 6501(j). Respondent has chosen the last of these three recourses, and we think this choice was within his discretion. See *John S. Neri, supra* at 770-771. The notice of deficiency was mailed within the 3-year limitations period described by section 6501(a) for 1969 and was, therefore, timely.

*Decision will be entered for the respondent.*