MELVIN C. AND GWEN NIELSEN, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23401-85.          Filed October 6, 1986.

*David R. Brennan*, for the petitioners.
*Jack Forsberg*, for the respondent.

## OPINION

COHEN, *Judge*: This case is before the Court on petition-
ers' motion for partial summary judgment. The issue
presented is whether section 6659[1] is applicable to under-
payments for taxable years for which returns were filed
prior to January 1, 1982, where such underpayments result
from disallowance of carrybacks from taxable years for
which returns were filed after December 31, 1981.

The material facts respecting this issue are not in dispute.
Petitioners filed Federal income tax returns for 1978 and
1979 prior to January 1, 1982. In April of 1982, petitioners
filed amended Federal income tax returns (Forms 1040X) for
1978 and 1979, claiming refunds for those years based on
carrybacks of unused investment tax credit from 1981. The
claimed refunds were paid in due course.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of
1954 as amended and in effect during the years in issue.

In the notice of deficiency, respondent determined deficiencies for 1978, 1979, and 1981 based on disallowance of the investment tax credit and a loss claimed by petitioners in 1981 with respect to their participation in a master recording tax shelter. The deficiencies determined for 1978 and 1979 resulted from the disallowance of the investment tax credit carrybacks claimed from 1981. The total credit claimed was $75,000, which was allocated $27,440, $33,573, and $13,987, to 1981, 1978, and 1979, respectively.

In July of 1983, petitioners filed a second amended return (Form 1040X) for 1979 claiming an additional refund for 1979 based on the claimed carryback of investment tax credit from 1982. Respondent's amendment to answer raises an increased deficiency for 1979 based on the disallowance of the investment tax credit carryback claimed from 1982. In the amendment to answer, respondent also seeks additions to tax under section 6659 with respect to the deficiencies determined for 1978, 1979, and 1981 and the increased deficiency sought for 1979.

Petitioners agree that they are not entitled to the investment tax credit claimed in relation to the master recording activity in 1981, that there is an addition to tax under section 6659 for 1981, and that the "applicable percentage" of the underpayment is 15 percent. Petitioners also agree that if we decide the issue here adversely to them, section 6659 is otherwise applicable to their 1978 and 1979 taxes, and the "applicable percentage" of the underpayments is 15 percent. Although the carryback from 1982 has not yet been resolved, the same legal issue exists with respect to that item.

Section 6659(a) provides:

SEC. 6659(a). ADDITION TO THE TAX.—If
(1) an individual, or
(2) a closely held corporation or a personal service corporation,
has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable.

The amendment that added section 6659 to the Internal Revenue Code states that it "shall apply to returns filed

after December 31, 1981." Sec. 722(a)(4), Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 341.

Petitioners argue that the addition to tax does not apply to their 1978 and 1979 tax returns because they were filed before the effective date of section 6659. Petitioners' argument is premised on the assumption that the "return" referred to in subsection (a)(4) of section 722 of ERTA is the return for the year of the underpayment upon which the addition to tax for a valuation overstatement is imposed. Petitioners also argue that the 1978 and 1979 Forms 1040X filed after December 31, 1981, were merely claims for refund and thus do not constitute tax returns. Respondent contends that an underpayment attributable to a valuation overstatement on a return filed after December 31, 1981, is subject to the addition to tax irrespective of the filing date of the return for the year of the underpayment. We find respondent's position to be more persuasive in view of the statutory language, the legislative history, and the apparent deterrent purpose of section 6659.

Subsection (a) of section 6659 imposes an addition to tax where there is "an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement." Another pertinent portion of section 6659[2] provides:

SEC. 6659(c). VALUATION OVERSTATEMENT DEFINED.—

(1) IN GENERAL.—For purposes of this section, there is a valuation overstatement if the value of any property, or the adjusted basis of any property, *claimed on any return* is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be). [Emphasis supplied.]

Read in conjunction, subsections (a) and (c)(1) (now 6659(c)) provide that the addition to tax for valuation overstatements is applicable to underpayments attributable to property or adjusted basis having been overvalued or overstated on *any* return by more than 150 percent. If an underpayment is attributable to such an overvaluation or overstatement, the addition to tax is applicable regardless of whether the overvaluation or overstatement is made on the return

---

[2]Sec. 6659 was amended by the Deficit Reduction Act of 1984,.sec. 155(c)(1)(A), Pub. L. 98-369, 98 Stat. 494, 693, to delete former sec. 6659(c)(2) and renumber as sec. 6659(c) the above provision, effective for returns filed after Dec. 31, 1984.

for the year of the underpayment or whether it is made on a return for an earlier or later period.

The House report and the House Conference report both state only that the provision applies to "returns filed after December 31, 1981." H. Rept. 97-201, at 244 (1981), 1981-2 C.B. 352, 398-399; H. Rept. 97-215 (Conf.), at 262 (1981), 1981-2 C.B. 481, 515. The General Explanation by the Staff of the Joint Committee on Taxation, however, describes the effective date as follows:

*Effective Date*

The provision applies to returns filed after December 31, 1981. Since the provision applies to returns filed after December 31, 1981, property that has been overvalued on a return filed prior to that date may give rise to the penalty on a return filed after December 31, 1981, if the original overvaluation produces a tax underpayment on the later filed return (and if the property has not been held for more than five years as of the close of the taxable year). Moreover, the provision could be applicable in situations where overvaluations in one year result in carryovers to future years which give rise to underpayments in those years. This will be the case in any situation in which an overvaluation of property in one year produces a tax benefit in that year which, in turn, has the result of producing a tax benefit in a future year (or future years). [Staff of the Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 335 (J. Comm. Print 1981).]

Accordingly, it seems that Congress contemplated and intended that the section apply at least in the following instances: (1) A return filed after the effective date including both an underpayment and a valuation overstatement; (2) a valuation overstatement on a return filed *before* the effective date and the related underpayment on a return filed after the effective date; and (3) a valuation overstatement on a return filed after the effective date and the related underpayment on a return filed subsequently. In each such case, the event, or the act of filing, that resulted in an underpayment attributable to a valuation overstatement took place after the effective date. Also, the actual underpayment of taxes occurred after the effective date.

Petitioners argue that because the committee explanation discusses only carryovers and not carrybacks, carrybacks must not have been intended. The circumstance present in this case, however, logically is a fortiori an appropriate one for application of section 6659. In the cases discussed in the

committee explanation, the taxpayer is merely repeating or incorporating by reference a valuation overstatement made prior to the time that it was subject to a statutory sanction. Perhaps an explanation of how the sanction might apply in a carryforward situation was necessary to avoid uncertainty in that area. It is inconceivable to us, however, that Congress intended to leave a gap for those who would place a valuation overstatement on a return for a year after the effective date of section 6659, carry back the claimed benefit of the overstatement to prior years, and obtain a refund of taxes for the prior years free of the risk of the sanction obviously intended to deter such overstatements.

In other contexts, we have held that an item carried back from a later year to an earlier year, is "attributable to" the adjustment in the later year. *Herman Bennett Co. v. Commissioner*, 65 T.C. 506 (1975). That is the only reasonable interpretation of section 6659(a) in this case.

Based on the foregoing, we need not determine whether the Forms 1040X are "returns."

Petitioners' motion for partial summary judgment will be denied.

*An appropriate order will be issued.*

Reviewed by the Court.
STERRETT, SIMPSON, GOFFE, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, and WILLIAMS, *JJ.*, agree with this opinion.